UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

JOHN DELANO WILSON,

        Plaintiff,

        v.                                                Case No. 13-C-0633

CAROLYN W. COLVIN
Acting Commissioner of Social Security,

        Defendant.

DECISION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER

John Delano Wilson appeals from the Social Security Administration's denial of his application for Supplemental Security Income disability insurance benefits (DIB) and Supplemental Security Income (SSI). Wilson's claim for benefits was denied initially and upon reconsideration. Thereafter, on February 29, 2012, Administrative Law Judge (ALJ) William Zellman conducted a hearing at which Wilson was represented by counsel, Timothy Clark. Wilson and a vocational expert (VE), Robert Neuman, testified at the hearing. On March 12, 2012, ALJ Zellman denied benefits. The Appeals Council denied review, thereby making the ALJ's decision the final decision of the Commissioner.

Wilson filed this appeal on June 6, 2013, again represented by counsel. He asserts that the ALJ committed errors of law and that the decision was not supported by substantial evidence.

Under 42 U.S.C. § 405(g), "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). On review, the court will overturn the Commissioner's final decision only if it lacks support by substantial evidence, is grounded in legal error, or is too poorly articulated to permit meaningful review.

*Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000). The court views the record as a whole but does not reweigh the evidence or substitute its judgment for that of the ALJ. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). The ALJ is not required to address every piece of evidence or testimony presented, but he or she must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination. *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). This court's review is confined to the rationale provided in the ALJ's decision. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

To obtain DIB and SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.

The Social Security Administration has adopted a sequential five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must evaluate in sequence: (1) whether the claimant is engaged in substantial gainful activity (if so, the claimant is not disabled); (2) whether the claimant has a severe physical or mental impairment (if not, the claimant is not disabled); (3) whether the claimant's impairments meet or equal one of the impairments listed in the Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"), which the Commissioner acknowledges to be disabling (if so,

2

the plaintiff is found disabled and the process ends); (4) whether the claimant possesses the residual functional capacity ("RFC") to perform past relevant work (if so, the claimant is not disabled); and (5) whether the claimant possesses the RFC, in conjunction with age, education, and work experience, to make the adjustment to other work existing in significant numbers in the national economy (if so, the claimant is not disabled). 20 C.F.R. 404.1520; *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). The claimant bears the burden of satisfying steps one through four in favor of disability, but at step five the burden shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005); *Young*, 362 F.3d at 1000.

RFC is the most the claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young*, 362 F.3d at 1000-01. The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC. § 404.1545(a)(2), (e).

The "Medical-Vocational Guidelines" or "grids" are tables appended to Social Security Administration regulations regarding disability benefits. 20 C.F.R. pt. 404, subpt. P, app. 2; *see Zurawski*, 245 F.3d at 889. The grids are used at step five of the ALJ's sequential analysis. *See id.* They set forth various combinations of exertional RFC and vocational factors of age, education, and previous work experience, giving the resulting decision (disabled or not disabled) for someone with those characteristics. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a).

The grids are based on "exertional" primary strength requirements of jobs: sedentary, light, medium, heavy and very heavy. SSR 83-14; *see* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a). The primary strength requirements consist of standing, walking,

3

sitting, lifting, carrying, pushing, and pulling. SSR 83-14. "Any functional or environmental job requirement which is not exertional is 'nonexertional.'" *Id.* Climbing, stooping, and talking are examples of nonexertional requirements. *See id.*

If a claimant's characteristics precisely match that of a grid, the claim is determined as indicated in the rule. *Id.*; *accord* 20 C.F.R. § 416.969. If a claimant's characteristics vary from the grids because RFC exertional limits do not fit into a category exactly or because nonexertional limitations exist, the ALJ uses the grids as a framework for decision. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(d); SSR 84-13. When a claimant cannot be found disabled based on exertional limitations alone, the starting point for determining the person's ability to function is the grid rule corresponding to the person's vocational profile and his or her "maximum sustained exertional work capability." SSR 83-14; *accord* 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2). That grid rule then provides a framework for evaluating the additional impairments of a nonexertional nature. *See* SSR 83-14. However, a vocational expert's testimony is necessary for making this determination. *Zurawski*, 245 F.3d at 889.

In the present case, the ALJ proceeded through all five steps of the analysis. He determined that Wilson had the RFC "to perform light work . . . that is unskilled with no constant reaching with the right upper extremity, no overhead reaching or lifting with the right upper extremity, maximum unilateral lifting with the right upper extremity of five pounds on an occasional basis, no constant use of the right upper extremity at any level, and no constant bending or twisting." (Tr. 28.) He decided at step five that Wilson was not disabled because there are jobs in significant numbers in the national economy that he is able to

4

perform: between 1500 and 2000 office clerk jobs, 700 to 900 information clerk jobs, and 1100 to 1300 shipping/receiving clerk jobs in the State of Wisconsin. (Tr. 32.)

ANALYSIS

A.    Treating Physician

Wilson contends that the ALJ did not properly consider the October 2011 opinion of treating physician Dean Ziegler. In a form completed October 27, 2011, Dr. Ziegler stated that Wilson's maximum ability to lift and carry on a frequent or occasional basis was less than ten pounds, his maximum ability to stand and walk during an eight-hour day was about two hours, his maximum ability to sit during an eight-hour day was about two hours, Wilson would have to change position from sitting or standing about every twenty minutes, he would have to walk around every twenty minutes and the walk would have to last twenty minutes, he would need to lie down three to four times a day at unpredictable times, and his impairments would cause him to miss more than four days of work per month. (Tr. 490-92.)

VE Neuman testified at the hearing that competitive employment would not exist for someone who missed four or more days per month or whose total time for sitting or standing combined was less than eight hours of a workday. (Tr. 82.) Thus, if Ziegler's assessment was accepted, the VE's testimony would indicate that Wilson was disabled.

Generally, the Administration gives more weight to the medical opinion of a source who examined the claimant than the opinion of a source who did not. 20 C.F.R. § 404.1527(d)(1). Further, because of the unique perspective of and longitudinal picture from a treating physician, his or her opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

5

inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2); *accord* SSR 96-2p; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). "Controlling weight" means that the opinion is adopted. SSR 96-2p. A treating physician's opinion may have several points; some may be given controlling weight while others may not. *Id.* An "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

An ALJ's finding that a treating physician's opinion is not entitled to controlling weight "does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-2p. In determining the weight to give a non-controlling treating physician's opinion, the ALJ must consider the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the physician's evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialty of the physician, and any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6).

The ALJ must state good reasons for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. The ALJ must give reasons "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. An ALJ can reject a treating physician's opinion only for reasons supported by substantial evidence in the record. *Gudgel*, 345 F.3d at 470.

In *Clifford*, for instance, the ALJ did not give controlling weight to a treating physician's opinion that Clifford was severely limited in her ability to perform certain work,

6

finding that the report was unsupported by medical evidence and inconsistent with Clifford's description of her daily activities. *See* 227 F.3d at 869-70. The Seventh Circuit remanded for reconsideration of the treating physician's opinion, finding that the ALJ did not cite to any medical report that contradicted the treating physician's opinion that Clifford suffered from degenerative knee arthritis limiting her ability to walk or stand and did not adequately articulate his reasoning for discounting the opinion that she could not perform repetitive work with her hands. *Id.* at 869-71.

In the present case, the ALJ discussed Dr. Ziegler's medical opinions as follows:

> The claimant's treating physician, Dr. Dean Ziegler, has opined on the claimant's functionality at different times. Dr. Ziegler was the orthopedic surgeon who operated on the claimant's shoulder. Initially, Dr. Zielger [sic] opined that the claimant should be off work for six weeks and then no over the chest reaching with right arm for six months (exhibit 10F-1). Approximately, [sic] two months later, Dr. Ziegler wrote a letter discussing the claimant's limitations (Exhibit 14F-1). He opined that the claimant was likely permanently impaired and that he should avoid heavy lifting away from the body and overhead after he has fully recovered from the surgery (Exhibit 14F-1). However, in a questionnaire from October 27, 2011, Dr. Ziegler indicates that the claimant is subject to disabling limitations (Exhibit 15F). Very little weight is given to the findings within this questionnaire. Dr. Zielgeler [sic] never treated the claimant for his back problem, but he indicated that because of "back issues" the claimant could never twist, stoop, or crouch (Exhibit 10F-2). This opinion is not supported by any objective findings, and is inconsistent with the reports [of] May 2011 (Exhibit 16F-3). Dr. Ziegler saw the claimant the same day he completed the assessment, and while he acknowledged some limitations and pain, the findings are not consistent with the claimant missing more than four days of work per month especially when Dr. Zielger [sic] set future appointment on an as needed basis (Exhibit 18F-1). Additionally, another doctor saw the claimant three weeks prior to doctor Ziegler, and believed that physical therapy would be appropriate for the shoulder (Exhibit 17F-4). Significant weight is given to limitations discussed in Dr. Ziegler's December 2010 letter (Exhibit 14F-1). Very little weight is given to the October 2011 assessment (Exhibit 15F). The limitations set forth are extreme and inconsistent with his own treatment notes, other doctors' findings and the balance of the medical evidence of record.

7

(Tr. 30, 31.)

This explanation for rejecting Dr. Ziegler's October 2011 opinion, even though Dr. Ziegler was a treating physician, is supported by substantial evidence and created the required "logical bridge" between evidence and conclusions. The ALJ pointed to evidence in the record indicating that Dr. Ziegler's opinions relating to Wilson's back issues were unsupported. The record showed that Dr. Ziegler had not treated Wilson for back issues or back pain; he was the surgeon who repaired Wilson's torn rotator cuff in October 2010 (Tr. 435) and met with Wilson for follow-up appointments as to that condition (Tr. 433). As noted by the ALJ and confirmed by Exhibit 15F, the October 27, 2011, assessment contained no references to objective medical findings or basis for Dr. Ziegler's opinion as to Wilson's back issues or time off work per month. Indeed, Dr. Ziegler's medical opinion failed to mention any examination or tests on Wilson's back. Moreover, the ALJ pointed to evidence in the record that was inconsistent with Dr. Ziegler's October 27, 2011, assessment. Dr. Ziegler's prior documentation discussed an anticipated return to full work duty within four to six months after surgery (Tr. 470) and permanent limitations only as to difficulty with the right arm in reaching and lifting away from the body (Tr. 488) and with the right shoulder (Tr. 489). Dr. Ziegler noted that even after full recovery Wilson likely would need to avoid heavy lifting away from the body and overhead. (Tr. 488.) But he said nothing about restrictions due to back pain or fatigue until the assessment a year after Wilson's surgery.

In addition to explaining why he did not give Dr. Ziegler's October 2011 assessment controlling weight, ALJ Zellner addressed many of the factors regarding the weight to be given to a noncontrolling treating-physician opinion. As noted above, the ALJ must

8

consider the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the physician's evidence supporting the opinion, the consistency of the opinion with the record as a whole, the specialty of the physician, and any other relevant factors. 20 C.F.R. § 404.1527(d)(2)-(6). Although the ALJ did not expressly point to these factors, his discussion covered them. He pointed out the nature and extent of the treatment relationship as involving shoulder surgery and follow up, *not* treatment for back-related issues or pain. Earlier in the opinion, the ALJ noted that the surgery occurred on September 20, 2010, and the discussion quoted above included references to follow-ups two months and fifteen months later. The ALJ addressed the lack of evidence from Dr. Ziegler's records regarding back pain treatment or tests. And the ALJ pointed to the inconsistency of the October 2011 assessment with another doctor's contemporary recommendation of physical therapy for the arm and shoulder (*see* Tr. 500). Further, the ALJ did not discount any of Dr. Ziegler's opinions except the October 2011 assessment; he accepted Dr. Ziegler's prior opinions, giving significant weight to the opinion of December 2010.

Wilson points to evidence consistent with Dr. Ziegler's October 2011 assessment, such as Dr. Ness's pain management evaluation that noted "'a history of motor vehicle accident with cervical, thoracic, and lumbosacral strain as well as right upper extremity numbness, tingling and pain" and a report of "'exacerbation of preexisting low back pain and right shoulder pain.'" (Doc. 9 at 8-10 (quoting Tr. 420).) But the existence of reports of lower back pain *to other doctors* prior to the surgery by Dr. Ziegler does not draw into question the ALJ's rejection of *Dr. Ziegler's* assessment of limitations based on Wilson's back pain or fatigue. Dr. Ziegler was Wilson's rotator-cuff surgeon and treated him for arm

9

and shoulder problems, and the ALJ accepted Dr. Ziegler's opinions as to that condition. Substantial evidence exists for the ALJ's rejection of the assessment going beyond that treatment relationship.

Finally on this point, Wilson contends that if the ALJ found inconsistencies in Dr. Ziegler's opinions of December 2010 and October 2011, he should have contacted Dr. Ziegler to seek clarification under 20 C.F.R. § 404.1512(e). But § 404.1512(e) is inapposite. The section provides that the Commissioner may ask a claimant to attend a consultative examination when insufficient evidence comes in from medical sources. Clarification of Dr. Ziegler's varying assessments was not required under § 404.1512(e).

This court cannot reweigh the evidence. The ALJ supported his discounting of Dr. Ziegler's October 2011 assessment with substantial evidence and created the necessary logical bridge. Therefore, Wilson's challenge on this point must be rejected.

B.      Consideration of Unemployment Insurance Benefits

Wilson contends that the ALJ improperly considered that Wilson was receiving unemployment insurance at the time of the hearing. According to Wilson, he should not be denied disability benefits "simply on the basis that he applied for and accepted UI benefits." (Doc. 9 at 18.)

First, nothing suggests that the denial of Wilson's claim was based solely on his receipt of unemployment compensation. The ALJ's opinion did not indicate that receipt of such benefits was dispositive in the ALJ's mind. The ALJ mentioned the unemployment benefits in his discussion of whether Wilson was engaging in substantial gainful activity (Tr. 26), not in the discussion of Wilson's credibility. And the ALJ's statements during the

10

hearing indicate the ALJ's understanding that receipt of unemployment benefits did not disqualify Wilson for disability benefits:

> Getting unemployment is not a deal breaker but it's a problem and the problem is this, it's not the receipt of the money it's that in order to get unemployment you represent to the state of Wisconsin that you're available for work and that you can work. They don't pay unemployment to disabled people. . . .
> . . . .
> . . . . So you're telling the state of Wisconsin that you can work and you're coming here and telling me you can't work and those are opposite positions . . . .
> . . . .
> So the problem is that it goes to credibility . . . .

(Tr. 63.)

Seventh Circuit law permits an ALJ to consider a claimant's application for and receipt of unemployment benefits as one of many factors impacting credibility. *Scrogham v. Colvin*, No. 13-3601, ___ F.3d ___, ___, 2014 WL 4211051, *12 (7th Cir. Aug. 27, 2014); *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) (stating that "we are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and prospective employers that he is able and willing to work should play absolutely *no* role in assessing his subjective complaints of disability"). Nothing indicates that the ALJ improperly considered the receipt of unemployment benefits.

C.   RFC

ALJ Zellner concluded that Wilson had the RFC to perform unskilled, light work "with no constant reaching with the right upper extremity, no overhead reaching or lifting with the right upper extremity, maximum unilateral lifting with the right upper extremity of five pounds on an occasional basis, no constant use of the right upper extremity at any level,

11

and no constant bending or twisting." (Tr. 28.) Wilson contends that even outside of the treatment of Dr. Ziegler's assessment, the ALJ's RFC finding is not supported by substantial evidence. Wilson contends that the record shows he is unable to perform sedentary work, let alone light work, and that the functional limitations added by the ALJ eliminate all light work jobs.

This last argument is quickly dismissed, as the VE testified about available light work jobs consistent with the RFC found by the ALJ. The ALJ referenced the testimony in his decision. (Tr. 32.) Thus, substantial evidence exists that the functional limitations added by the ALJ did not eliminate all light work jobs.

Wilson's argument that the ALJ's light-work finding is unsupported merits more discussion. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; a job in this category requires "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b). Sedentary work involves lifting no more than ten pounds at a time "and occasionally lifting or carrying articles like docket files, ledgers, and small tools. The job involves sitting, though walking and standing may be required occasionally. 20 C.F.R. §§ 404.1567(a), 416.967(a).

Wilson argues that the ALJ failed to properly consider medical evidence, in particular that from Dr. Mary Ellen Ness, supporting a finding (contrary to the ALJ's) of the disabling effect of Wilson's conditions; that the ALJ cherry-picked the opinions of state-agency physicians that the ALJ found more agreeable; and that the ALJ did not consider Wilson's daily fatigue and statements regarding his limitations.

12

Some of the evidence that Wilson cites as support for a finding of disability concerns the extent of his arm injury. But the ALJ's opinion indicates that he *accepted* that evidence and gave it great weight. The RFC finding contains several limitations on Wilson's use of his right arm, consistent with the medical evidence. The ALJ found that Wilson's right shoulder is permanently impaired, although he also determined that Wilson retained some functionality and could perform some work involving minimal use of the right arm. (Tr. 29.) The ALJ cited evidence such as Wilson's grip strength and good recovery from surgery to substantiate that Wilson retained some functionality. (*Id.*)

Regarding Wilson's lower back pain and poor sleep, at step two the ALJ found that Wilson's severe impairments included those conditions. (Tr. 26.) In his decision, ALJ Zellner observed that Wilson reported difficulties in sitting and standing for long periods, lifting and bending, and sleeping. (Tr. 29 (pointing to Exhibits 3E-6, 3E-9, 17F-3).) ALJ Zellner found Wilson to be generally credible and accepted that his condition limited his ability to bend or twist. However, the ALJ discounted Wilson's assertions that his back pain was disabling:

> As for the claimant's back pain, the medical evidence of record does not support the claimant's allegations of disabling back pain. The imaging studies of the claimant's back have not revealed the presence of a specific impairment (Exhibits 1F, 6F). The treatment notes from May 2011 document normal posture and normal flexion, extension, rotation, and lateral bend of the neck. There was no spine tenderness, straight leg raising was negative, and the claimant had a normal gait (Exhibit 16F-3). . . . The undersigned found the claimant to be generally credible at his hearing when discussing his back pain. The undersigned limited the claimant's bending and twisting to less than constant in order to accommodate the claimant's complaints of back pain.
> . . . .
> No one doubts the claimant experiences some pain and discomfort. The issue to be determined is if the severity of the claimant's pain with resultant functional limitations constitutes a disabling condition within the

13

> meaning of the Social Security Act. The undersigned is not convinced that the claimant is disabled because of his pain. The claimant is able to perform a variety of daily activities that are consistent with light work. The claimant can cook meals, perform household chores, drive a car and go grocery shopping (Exhibit 3E). The claimant also went back [to] work at different times cleaning carpets and driving a dump truck. The undersigned accepts that the claimant is not able to perform those jobs on a regular and continuing basis, but the fact that he worked at these jobs is evidence that the claimant can do more than he has alleged.

(Tr. 29-30; *see also* Tr. 68 (stating that "your testimony is pretty credible").) In addition to limiting Wilson's bending and twisting due to back pain, the ALJ considered Wilson's left ventricular hypertrophy and obesity in combination with his back condition and pain to determine that Wilson cannot sustain the exertional demands of heavy or medium work. So the ALJ did credit the reports of back pain to some extent, though he found the condition not to be as extreme as Wilson asserted.

In an evaluation on April 28, 2010, Dr. Ness at Pain Rehabilitation Associates noted Wilson's report of constant lower-back pain as an eight and one-half on a scale of ten following his motor vehicle accident. She found tenderness upon palpation of the back musculature and diagnosed Wilson as having "cervical, thoracic, and lubosacral strains." (Tr. 419-20.) She recommended that Wilson remain off of work. (Tr. 420.)

The ALJ did not mention Dr. Ness by name, but he did reference her records (in Exhibit 6F) in bulk regarding pain medication, the fact that a car accident in April 2010 "aggravated his back and shoulder pain," and the statement that "imaging studies of the claimant's back have not revealed the presence of a specific impairment." (Tr. 29.) The lack of in-depth discussion of Dr. Ness's April 2010 records and diagnosis of lower-back pain does not require reversal. The decision indicates that the ALJ considered Ness's records in Exhibit 6F yet found other evidence regarding Wilson's back pain more current

14

and persuasive. For instance, the ALJ pointed to records from PA Margaret Kolodij, dated May 17, 2011, that showed "[n]o spinous process tenderness" and "[n]o paravertebral muscle tenderness or spasm." (Tr. 29 (referencing Exhibit 16F-3, i.e. Tr. 495).)

Wilson suggests that the ALJ gave great weight to the two state-hired reviewing physicians' opinions improperly. The ALJ accepted the reviewers' opinions that Wilson was limited to light work and could not reach overhead with the right arm, and he observed that one reviewing doctor found that Wilson was only partially credible regarding his allegations of restricted activities. The ALJ said that based on the evidence these reviewers' opinions were given significant weight.

The ALJ said he weighed theses statements as those of nonexamining expert sources. (Tr. 3.) There is no basis for finding that the ALJ did not understand the standard for nontreating versus treating sources, and the ALJ supported his weight of all of the doctors' opinions with substantial evidence.

Regarding fatigue from insomnia, the ALJ noted that Wilson displayed some symptoms of depression, complained of insomnia, and took psychotropic medication, but he found that Wilson nevertheless maintained the mental ability to work. (Tr. 30.) To support his finding, the ALJ pointed to Wilson's testimony that he could work but for the back and shoulder pain and examples of Wilson engaging in complex mental activities, unimpeded by his fatigue or insomnia or medication. (*Id.*) The decision indicates that the ALJ considered evidence regarding this condition, and he provided a logical bridge to his conclusion that the condition was not disabling.[1]

---

[1] The ALJ also discussed Wilson's sleep difficulties and moderate restriction at step three, noting that Wilson engaged in activities such as reading and playing chess that showed an ability to maintain focus over an extended period of time. (Tr. 27.) The discussion at step three confirms that at step five the ALJ fully

15

In sum, substantial evidence supports the ALJ's RFC finding. The ALJ did not need to discuss every piece of evidence as long as he provided that bridge between the evidence and his conclusions. Here, the decision reflects consideration of all of the evidence, including that favoring Wilson, but the ALJ determined that Wilson's back pain and sleep issues were not disabling. This court does not reweigh the evidence and must affirm the ALJ's decision as sufficiently supported.

D.   The Grids

Wilson contends that Medical-Vocational "Rule 201(h)" directs that someone with his RFC and other personal factors be considered disabled. Assuming that Wilson means Guideline (or Grid) 201.00(h), that rule discusses persons who are restricted to sedentary work and merely suggests that a finding of disabled may be appropriate for some individuals under age forty-five who do not have the ability to perform a full range of sedentary work or do not speak or read English. As stated above, Wilson's RFC is for a subset of light work, and as the ALJ's RFC finding is being affirmed, Rule 201.00(h) does not apply to his situation.

CONCLUSION

For the above-stated reasons,

IT IS ORDERED that the decision of the Commissioner is affirmed.

Dated at Milwaukee, Wisconsin, this 31st day of August, 2014.

BY THE COURT
/s/ C.N. Clevert, Jr.
C.N. CLEVERT, JR.
U.S. DISTRICT JUDGE

---

considered the relevant evidence concerning the condition.

16